UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                :

UNITED STATES OF AMERICA,        :

                                :

               Plaintiff,        :       13-cv-5475 (NSR)

   -against-                    :

                                :       OPINION AND ORDER

THE COUNTY OF WESTCHESTER, NEW    :
YORK,                              :

                                :

               Defendant.     :
-------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

      Plaintiff the United States of America ("Plaintiff") commenced the instant action against

Westchester County ("Defendant"), asserting federal claims under the Safe Drinking Water Act,

42 U.S.C. §§ 300f *et seq.* ("SDWA"), for failing to treat the drinking water that it provides to its

residents through its Water District No. 1 to rid it of the dangerous parasite Cryptosporidium.

Defendant now moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the

complaint in its entirety. Defendant aver that Plaintiff has failed to adequately allege in its

complaint that Westchester County Water District No. 1 meets the definition of a public water

system and community water system under the SDWA and its implementing regulations.

Plaintiff cross moves for partial summary judgment on the issue of defendant's liability pursuant

to Rule 56 of the Federal Rules of Civil Procedure, asserting there is no genuine dispute of

material fact and Plaintiff is entitled to judgment as a matter of law. For the following reasons,

Defendant's motion to dismiss is denied and Plaintiff's motion for summary judgment is denied.

## I. THE FACTS

      The facts are gleaned from the parties' 56.1 statements, affidavits, and exhibits submitted

with this motion, and are not in dispute except where noted.

In 1964, District No. 1 was formed in order to purchase the KB Pipe Line from New York City ("NYC") and to serve the municipalities of Mount Vernon, Scarsdale, White Plains and Yonkers. Declaration of Thomas J. Lauro sworn to on March 21, 2014 ("Lauro Decl."), ¶ 4. In or around 1966, District No. 1 purchased the KB Pipe Line and has operated it ever since. *Id.*

District No. 1 purchases water from the NYC water supply. The water is obtained from two sources, the Kensico Reservoir/Dam and *via* Shaft No. 22 of the Delaware Aqueduct. The water purchased from the NYC water supply is then sold by District No. 1 to municipalities in Westchester County. These municipalities take said water through their own connections to the KB Pipe Line. Arnett Decl. ¶ 3.

District No. 1 provides water via pipes. Kraft Decl. Ex. D at US000965 (District No. 1 conveys water "through the 48" Kensico-Bronx pipeline to various take off points that serve the District's member municipalities of White Plains, Scarsdale, Mount Vernon and Yonkers"); Kraft Decl. Ex. J at USA000941 (same). The Commissioner of the Westchester Department of Environmental Facilities is designated as the administrative head of District No. 1. *See* Lauro Decl., ¶ 1.

Mount Vernon, Scarsdale, White Plains, and Yonkers obtain water from District No. 1. Kraft Decl. Ex. J at USA000941 (District No. 1 provides water to "District No. 1's member municipalities of White Plains, Scarsdale, Mount Vernon and Yonkers."). The Town of North Castle, although not a District No. 1 member, takes a portion of its water from the public water system of the City of White Plains.

Water taken directly from the KB Pipe Line goes through certain municipalities' own distribution systems before that water is distributed to their individual residents. *See* Lauro Decl.

2

¶ 8.

The City of Yonkers owns and operates a public water system that receives some of its water from District No. 1 and provides water to more than 100,000 individuals. Barcelo Decl. Ex. B at WC017240 (Yonkers' system "serve[s] the 195,976 residents of the City of Yonkers"); Barcelo Decl. Ex. C at WC017226 (the distribution system maintained by the City of Yonkers serves 196,086 individuals).

District No. 1 obtains some of the water that it provides to the Municipalities directly from the Kensico Reservoir. Kraft Decl. Ex. J at USA000941 ("District No. 1 takes [raw] water . . . directly from the Kensico Reservoir. . . ."). Kensico Reservoir is an unfiltered water source. Kraft Decl. ¶ 5, Ex A. Kensico Reservoir is a reservoir in New York State that is open to the atmosphere and subject to surface runoff. Kraft Decl. ¶ 7.

District No. 1 provides treatment to the water it obtains from Kensico Reservoir. Barcelo Decl. Ex. A at WC018156 (treatment for water obtained from Kensico Dam includes "[d]isinfection using sodium hypochlorite, pH adjustment with sodium hydroxide (caustic soda) and corrosion control using orthophosphate"); Kraft Decl. Ex. J at USA000942 ("District No. 1 provides chlorination, caustic and corrosion control at Kensico Dam. . .").

In a letter to the Environmental Protection Agency ("EPA") dated May 12, 2010, the County described District No. 1 as "a Schedule 1 system" pursuant to the Enhanced Water Treatment Rule. Kraft Decl. Ex G at USA000962. In a letter to the EPA dated December 13, 2011, the County stated that "District No. 1 is a Schedule 1 system required to provide [treatment pursuant to the Enhanced Water Treatment Rule] by April 1, 2012." Kraft Decl. Ex J at USA000941.

On or about April 26, 2002, the County submitted an application to the EPA for Security

Planning Grants ("Application"). In the application, the County stated that District No. 1 "serves a population of about 187,000 people." Kraft Decl. Ex. K at USA001741 (explaining that District No. 1 "serves a population of about 187,000" by "supply[ing] water from. . . Kensico Reservoir. . . to the [Municipalities who then], in turn, deliver the water through their own distribution systems to the individual customers").

The District No. 1 has never received an extension pursuant to 40 C.F.R. § 141.713(c) to comply with the Enhanced Water Treatment Rule's treatment requirements. Kraft Decl. ¶ 20.

According to Plaintiff, District No. 1 does not treat its water for Cryptosporidium. Kraft Decl. ¶ 15. Defendant disputes this fact, stating that it treats its water for Cryptosporidium through chlorine disinfection. *See* Lauro Decl. ¶¶ 10-11; *see also* Doyle Decl. ¶¶ 3-4.

Plaintiff filed its complaint on August 6, 2013. Defendant moved to dismiss and Plaintiff cross moved for partial summary judgment on April 4, 2014.

## II. MOTION TO DISMISS STANDARD

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

When there are well-pleaded factual allegations in the complaint, "a court should assume

4

their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*
A claim is facially plausible when the factual content pleaded allows a court "to draw a
reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.
Ultimately, determining whether a complaint states a facially plausible claim must be "a context-
specific task that requires the reviewing court to draw on its judicial experience and common
sense." *Id.* at 679. When determining the plausibility of a complaint, "[i]n addition to
allegations in the complaint itself, the Court may consider documents attached as exhibits and
documents incorporated by reference in the complaint." *Lesesne v. Brimecome*, 918 F. Supp. 2d
221, 223 (S.D.N.Y. 2013) (citing *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011);
*Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008)).

## III. SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil
Procedure. The rule states in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or
> the part of each claim or defense—on which summary judgment is sought. The
> court shall grant summary judgment if the movant shows that there is no genuine
> dispute as to any material fact and the movant is entitled to judgment as a matter
> of law.

Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of
any genuine dispute or issue[1] of material fact by pointing to evidence in the record, "including
depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which
it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v.
Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has fulfilled its preliminary burden,

---

[1] The 2010 amendment to the Rule retained the summary judgment standard of former subdivision (c), but replaced
"issue" with "dispute" because the term "better reflects the focus of a summary judgment determination." Fed. R.
Civ. P. 56 advisory committee's note on 2010 amendments. Thus, the terms are interchangeable in this context.

the onus shifts to the nonmoving party to raise the existence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013); *Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) ("The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact . . . ."), nor is it to determine a witness's credibility, *Anderson*, 477 U.S. at 249. Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

Where, as here, the intent of an individual is in dispute, "intent is always a subjective matter of inference and thus rarely amenable to summary judgment." (quoting *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980)); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("[S]ummary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated."). However, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita*

6

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))).

**IV. Defendant's Motion to Dismiss Plaintiff's SDWA Claim**

In 1974, "Congress passed the Safe Drinking Water Act in response to increasing indications of a serious threat to health from contaminants in our drinking water not related to communicable disease. . . . There is ample evidence establishing the fact that our drinking water is contaminated with a large variety of organic substances, of demonstrated carcinogenicity in animals." *EDF v. Costle (Safe Drinking Water)*, 188 U.S.App.D.C. 95 at 101, 103, 578 F.2d 337 at 343, 345 (1978). The SDWA was enacted "to assure that water supply systems serving the public meet minimum national standards for protection of public health." *Bath Petroleum Storage, Inc. v. Sovas*, 309 F.Supp.2d 357, 366 (N.D.N.Y. 2004); *City of Evansville, Inc. v. Ky. Liquid Recycling*, 604 F.2d 1008, 1016 n. 25 (7th Cir. 1979) (quoting H.R. Rep. No. 93–1185, reprinted in [1974] U.S. Code Cong. & Admin. News at 6454), *cert. denied*, 444 U.S. 1025, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980). This enactment authorized the EPA to establish Federal standards that would be applicable to all public water systems and to establish a joint Federal–State system for assuring compliance with these standards and for protecting underground sources of drinking water. *Hudson River Fishermen's Ass'n v. City of New York*, 751 F.Supp. 1088, 1100 (S.D.N.Y. 1990). The SDWA effectively mandated filtration of public water systems using surface water, with limited exceptions. *U.S. v. City of New York*, 96 F.Supp.2d 195, 199 (E.D.N.Y. 2000).

7

A "public water system" pursuant to the SDWA is "a system for the provision to the public of water for human consumption through pipes or other constructed conveyances [that] regularly serves at least twenty-five individuals. . . ." 42 U.S.C. § 300f(4)(A); *see also* 40 C.F.R. § 141.2 (definition of "public water system" tracking statutory definition).

The gravamen of Defendant's motion to dismiss challenges Plaintiff's claim that District No. 1 is a public water system subject to the requirements of the Enhanced Water Treatment Rule. Defendant argues that the plain meaning of the term "serves" as used in the SDWA's definition of "public water system" does not include a system such as District No. 1 because the District "serves" individuals only indirectly. Defendant argues that the term "serves" refers exclusively to direct service and District No. 1 does not count as a public water system based on that service. Defendant concedes that District No. 1 supplies partially treated water to thousands of people. Defendant's Opp. at 2-3. Although it serves at least 187,000 individuals, Defendant argues that District No. 1 is not a public water system because it serves only indirectly (*i.e.*, via the public water systems owned and operated by the Municipalities). *See* Defendant's Motion at 2.

In interpreting a statute, a court will first look to its plain meaning. *See Rubin v. United States*, 449 U.S. 424, 431 (1981). The Court finds that the plain meaning of the word "serves" encompasses both direct and indirect service. As Plaintiff argues, statutes such as the Fair Labor Standards Act of 1938 specify direct service where it intends to refer only to direct service. *See* Plaintiff's Reply at 5. The EPA's position on this issue is that "service" in this context may be indirect. *See* Plaintiff's Opening Br. at 10-12. Deference to the EPA's interpretation is appropriate where "Congress has not directly addressed the precise question at issue" through the statutory text. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837,

843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In making the threshold determination under

*Chevron,* "a reviewing court should not confine itself to examining a particular statutory

provision in isolation." *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 132, 120

S.Ct. 1291, 146 L.Ed.2d 121 (2000). Rather, "[t]he meaning—or ambiguity—of certain words or

phrases may only become evident when placed in context.... It is a 'fundamental canon of

statutory construction that the words of a statute must be read in their context and with a view to

their place in the overall statutory scheme.'" *Id.,* at 132–133, 120 S.Ct. 1291 (quoting *Davis v.*

*Michigan Dept. of Treasury,* 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989)). The

Court defers to EPA's reasonable and considered position that applies the SDWA to entities that

indirectly provide drinking water to more than twenty-five individuals. *See* Plaintiff's Opp. at 10.

## V. Plaintiff's Motion for Summary Judgment on Liability

To demonstrate Defendant's liability under the Enhanced Water Treatment Rule, Plaintiff

must show that: (i) Defendant owns and operates District No. 1; (ii) District No. 1 is a public

water system subject to the Enhanced Water Treatment Rule; (iii) District No. 1's deadline for

complying with the Enhanced Water Treatment Rule was April 1, 2012; and (iv) District No. 1

failed to comply with Enhanced Water Treatment Rule by its April 1, 2012 deadline or at any

time to date.

First, there is no genuine issue of material fact that Defendant owns and operates District

No. 1, an entity that is funded by Defendant's monies and administered by Defendant's

Department of Environmental Facilities. Barcelo Decl. Ex. A at WC018090, WC018156, *see* 42

U.S.C. § 300f(5); *see also United States* v. *Alisal Water Corp.*, 114 F. Supp. 2d 927, 937-38

(N.D. Cal. 2000) (adopting for purposes of the SDWA the definition of an "owner" or "operator"

developed by courts for purposes of the Comprehensive Environmental Response, Compensation

and Liability Act, 42 U.S.C. § 9607(a)(2) of "'someone who directs the workings of, manages, or conducts the affairs of a facility'" (quoting *United States* v. *Bestfoods*, 524 U.S. 51, 56 (1998))).

Here, there is no dispute that Defendant "manages" District No. 1. Barcelo Decl. Ex. A at WC018090 ("The County of Westchester's Department of Environmental Facilities is responsible for the operations of . . . two water districts."), WC018156 (providing information about County Water District No. 1).

Second, as discussed above, District No. 1 is a public water system because it regularly serves more than 25 individuals by providing them with water for human consumption through the Municipalities. *See* 42 U.S.C. § 300f(4)(A) (SDWA's definition of public water system); *see also* 40 C.F.R. § 141.2 (definition of public water system); Kraft Decl. Ex. J at USA 000941. Indeed, Defendant has, on various occasions, admitted this point. Kraft Decl. Exs. D, G, J, K. Moreover, as a public water system, District No. 1 is subject to the Enhanced Water Treatment Rule because the Kensico Reservoir from which it obtains water is a surface water source. Kraft Decl. ¶ 6; 40 C.F.R. §§ 141.2 (definition of "surface water"), 141.700(b); Barcelo Decl. Ex. B at WC017240 (City of Yonkers 2012 Annual Water Quality Report, describing the source for its drinking water as "unfiltered surface water").

Third, because District No. 1's has an unfiltered source, the provisions of 40 C.F.R. § 141.713(c) apply to determine the District's deadline to comply with those treatment requirements. Kraft Decl. ¶ 5, Ex. A. Based on the size of the population that it serves—100,000 or more individuals—40 C.F.R. § 141.713(c) provides that District No. 1 had an April 1, 2012 deadline to comply with the Enhanced Water Treatment Rule's treatment requirements. Because District No. 1 provides treated water to the Municipalities, which own and operate their own public water systems, it is properly considered to be a "wholesale system" within the meaning of

the SDWA National Primary Drinking Water Regulations (the "NPDWRs"). *See* 42 U.S.C. § 141.2 (definition of "wholesale system"). Accordingly, pursuant to 40 C.F.R. § 141.700(b)(1), District No. 1 "must comply with the requirements of [the Enhanced Water Treatment Rule] based on the population of the largest system in the combined distribution system." Because the largest of the Municipalities—Yonkers—serves over 100,000 individuals, District No. 1 was subject to an April 1, 2012 deadline to comply with the treatment requirements in the Enhanced Water Treatment Rule. Barcelo Decl. Ex. B at WC017240, Ex. C at WC017226.

However, there is a genuine dispute of material fact of whether District No. 1 complied with treatment requirements contained in the Enhanced Water Treated Rule on or before April 1, 2014 and whether it is presently out of compliance. While Plaintiff contends that Defendant remained out of compliance to the present date, Defendant counters: "the federal regulation that Plaintiff relies on for liability provides that New York State may allow for compliance by April 1, 2014." Defendant's Opp. at 23 citing 40 C.F.R. § 141.713(c) n.a. Plaintiff has not conclusively established that District No. 1's deadline for complying with the Enhanced Water Treatment Rule's treatment requirements expired on April 1, 2012. Discovery would further illuminate this issue.

## VI. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss and Plaintiff's cross-motion for summary judgment are both DENIED. The Clerk of Court is respectfully requested to terminate these motions (Doc. 26 and 29).

11

Dated: April 28, 2014
      White Plains, New York

SO ORDERED:

NELSON S. ROMAN
United States District Judge