UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,        :

                           :

           Plaintiff,      :      **CONSENT DECREE**

                           :

           v.             :

                           :      13 Civ. 5475 (NSR)

THE COUNTY OF WESTCHESTER,   :
NEW YORK,                  :

                           :

          Defendant.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WHEREAS, Plaintiff, the United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"), filed a Complaint against Defendant, the County of Westchester, New York ("Defendant"), alleging, *inter alia*, that Defendant has violated and continues to violate the Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300f, *et seq.*, and the Long Term 2 Enhanced Surface Water Treatment Rule, 40 C.F.R. Part 141, Subpart W ("Enhanced Water Treatment Rule");

WHEREAS, the United States and the Defendant (collectively, the "Parties") recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid further litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, with the consent of the Parties, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

## I.   JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action pursuant to Section 1414(b) of the SDWA, 42 U.S.C. § 300g-3(b), and 28 U.S.C. §§ 1331, 1345 and 1355, and over the Parties.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/2/2015

2.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) and

1395(a) because Defendant is located in this District and the events giving rise to the claims in

the Complaint arose in this District.

3.      For purposes of this Consent Decree, or any action or proceeding to enforce this

Consent Decree, Defendant consents to the Court's jurisdiction over Defendant, this Consent

Decree, and any such action or proceeding to enforce this Consent Decree, and also consents to

venue in the Southern District of New York.

## II.   DEFINITIONS

4.      Unless otherwise defined herein, terms used in this Consent Decree shall have the

meanings provided in the SDWA and the Enhanced Water Treatment Rule.  The following

definitions apply for the purposes of this Consent Decree:

a.      "Complaint" shall mean the complaint filed by the United States in this action.

b.      "Consent Decree" shall mean this Consent Decree; Appendix A; and all modifications made effective in accordance with Section XVIII.

c.      "Date of Lodging" shall mean the date this Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Southern District of New York.

d.      "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

e.      "Defendant" shall mean the County of Westchester, New York, and any successors or assigns.

f.      "Documents" shall be defined in accordance with Local Civil Rule 26.3 of the Local Rules of the United States District Court for the Southern District of New York.

g.      "Effective Date" shall have the definition provided in Section XVI.

h. "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

i. "Enhanced Water Treatment Rule" shall mean the Long Term 2 Enhanced Surface Water Treatment Rule, 40 C.F.R. Part 141, Subpart W.

j. "K-B Connections" shall mean the K-B North Connections and K-B South Connections.

k. "K-B North Connections" shall mean the service connections to the City of White Plains, the Town/Village of Scarsdale, and the Crisfield Pump Station in the City of Yonkers.

l. "K-B South Connections" shall mean the service connections to the cities of Mount Vernon and Yonkers (other than the Crisfield Pump Station).

m. "Member Municipalities" shall have the meaning provided in Section 5.a, below.

n. "Notice to Proceed" shall mean written notice from Defendant or Water District No. 1 to the persons responsible for construction of the Local UV Treatment Systems.

o. "NYSDOH" shall mean the New York State Department of Health.

p. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

q. "Parties" shall mean the United States and Defendant.

r. "Purchase" shall be deemed to include the bidding for and awarding of contracts for the purchase of necessary equipment, the drafting and complete execution of contracts, completion of shop drawings, and fabrication of equipment, to the extent any fabrication must take place before the delivery of said equipment to the site.

s. "SDWA" shall mean the Safe Drinking Water Act, 42 U.S.C. §§ 300f to 300j-26.

t. "Section" shall mean, except when citing a provision of the SDWA or other statute or regulation, a portion of this Consent Decree identified by a Roman numeral.

u. "Shaft 22" shall mean the shaft of the Delaware Aqueduct in Yonkers, New York, that connects Water District No. 1 to the New York City water system.

3

v. "Supplemental Environmental Project" or "SEP" shall mean the projects specified in Section VIII.

w. "Water District No. 1" shall mean Westchester County Water District No. 1, a special district created by New York State law, which is operated by Defendant, and consists of the area of the cities of White Plains, Yonkers, and Mount Vernon, and the Town/Village of Scarsdale.

x. "WCDOH" shall mean the Westchester County Department of Health.

y. "United States" shall mean the United States of America, acting on behalf of EPA.

### III.   ADMISSIONS

5.     Defendant admits, acknowledges, and accepts responsibility for the following:

a. Water District No. 1 provides drinking water to the public water systems owned and operated by the cities of Mount Vernon, White Plains, and Yonkers, and the Town/Village of Scarsdale (the "Member Municipalities"). The public water systems of the Member Municipalities in turn distribute the drinking water they receive from Water District No. 1 to their residents.

b. Defendant operates Water District No. 1. The District Court held in this case that Water District No. 1 is a public water system.

c. The Enhanced Water Treatment Rule, promulgated by EPA pursuant to the SDWA, required certain public water systems to implement specific water treatment measures for the inactivation of Cryptosporidium by April 1, 2012.

d. The District Court further held in this case that Water District No. 1 was "subject to [the] April 1, 2012 deadline to comply with the treatment requirements in the Enhanced Water Treatment Rule."

4

e.     Water District No. 1 did not implement the water treatment measures of
the Enhanced Water Treatment Rule by April 1, 2012, and to date has not implemented the water
treatment measures of the Enhanced Water Treatment Rule.

f.     Defendant, as operator of Water District No. 1, failed to ensure that Water
District No. 1 implemented the water treatment measures of the Enhanced Water Treatment
Rule.

## IV.    APPLICABILITY

6.     The obligations of this Consent Decree apply to and are binding upon the United
States and Defendant, and any successors and assigns or other entities or persons otherwise
bound by law.

7.     No transfer of ownership or operation of Water District No. 1, whether in
compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its
obligation to ensure that the terms of this Consent Decree are implemented.  At least 30 Days
prior to any such transfer, Defendant shall provide a copy of this Consent Decree to the proposed
transferee and shall simultaneously provide written notice of the prospective transfer, together
with a copy of the proposed transfer agreement, to the United States and EPA, in accordance
with Section XV.  Any attempt to transfer ownership or operation of Water District No. 1
without complying with this Paragraph constitutes a violation of this Consent Decree.
Notwithstanding the foregoing, if Water District No. 1 is dissolved or transferred by action of the
New York State Legislature, Defendant may seek appropriate relief under Section XI or Rule
60(b) of the Federal Rules of Civil Procedure.

8.     Defendant shall provide a copy of this Consent Decree to all officers, employees,
and agents whose duties might reasonably include compliance with any provision of this Consent

Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

9.  In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## V.  EFFECT OF SETTLEMENT AND RESERVATIONS OF RIGHTS

10.  This Consent Decree resolves the claims of the United States for the violations alleged in the Complaint through the Date of Lodging. Furthermore, the Parties agree that in any future civil action pursuant to 42 U.S.C. § 300g-3(b) for injunctive relief to address Safe Drinking Water Act violations that occur after the Date of Lodging, Defendant's compliance or non-compliance with the remedial measures set forth in this Consent Decree may be taken into account by a District Court in fashioning appropriate injunctive relief. The Parties further agree that in any future civil action pursuant to 42 U.S.C. § 300g-3(g) for penalties for Safe Drinking Water Act violations that occur after the Date of Lodging, Defendant's compliance or non-compliance with the remedial measures set forth in this Consent Decree may be considered to be among the factors that may be taken into account by a District Court in determining the amount of a civil penalty.

11.  The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 10. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the SDWA, the Enhanced Water Treatment Rule, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 10. The

United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, within, or posed by, Water District No. 1, whether related to the violations addressed in this Consent Decree or otherwise.

12.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to Water District No. 1 or Defendant, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 10.

13.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits, and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with any provision of the SDWA, the Enhanced Water Treatment Rule, or with any other provisions of federal, state, or local laws, regulations, or permits, if applicable.

14.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the

rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

15.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## VI.    CIVIL PENALTY

16.     Within 30 Days after the Effective Date, Defendant shall pay the sum $1,108,771 as a civil penalty, together with interest accruing from the Effective Date, at the rate specified in 28 U.S.C. § 1961 as of the Effective Date.

17.     Defendant shall pay the civil penalty described in the preceding Paragraph at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions to be provided to Defendant by the Financial Litigation Unit ("FLU") of the U.S. Attorney's Office for the Southern District of New York after the Effective Date.  The payment instructions provided by the FLU shall include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions via e-mail to Adam Rodriguez (aqrc@westchestergov.com) on behalf of Defendant.  Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XV.

18.     At the time of payment, Defendant shall send notice that payment has been made to: (i) EPA via e-mail at acctsreceivable.cinwd@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 Martin Luther King Drive, Cincinnati, OH 45268; and (ii) the United States via e-mail or regular mail in accordance with Section XV.  Such notice shall reference the CDCS number and Department of Justice case number 90-5-1-1-10536

VII.    COMPLIANCE REQUIREMENTS

19.    Defendant shall complete construction of two Local UV Treatment Systems, one

at the Orchard Street Pumping Station ("OSPS") in White Plains, New York, and one at the

Central Avenue Pumping Station ("CAPS") in White Plains, New York.  The OSPS UV

Treatment System shall have the capacity to treat 20 million gallons per day of drinking water.

The CAPS UV Treatment System shall have the capacity to treat 40 million gallons per day of

drinking water.  Defendant shall commence operation of the two Local UV Treatment Systems

in accordance with 40 C.F.R. Part 141, and all other applicable federal and state laws, and shall

ensure that all drinking water provided to the K-B Connections receives UV treatment in

accordance with 40 C.F.R. Part 141.

20.    Until Defendant completes construction and commences operation of the two

Local UV Treatment Systems, and commences providing compliant UV-treated drinking water

to the K-B Connections, Defendant shall perform the following interim measures (the "Interim

Measures"):

a.    Provision of compliant water:  Defendant shall back-feed water from Shaft

22 to: (i) the Crisfield Pumping Station from October 1 through April 30 of any calendar year;

and (ii) the Reeves-Newsom Pumping Station from November 1 through March 31 of any

calendar year.  Defendant's foregoing obligations to back-feed shall begin 30 days after the

Effective Date.  By providing drinking water back-fed from Shaft 22 via the Crisfield Pumping

Station during these specified periods of time, Defendant shall ensure that all drinking water

provided by Water District No. 1 to the City of Yonkers is in compliance with the Enhanced

Water Treatment Rule.  By providing drinking water back-fed from Shaft 22 via the Reeves-

Newsom Pumping Station during these specified periods of time, Defendant shall ensure that all

drinking water provided by Water District No. 1 to the Town/Village of Scarsdale is in compliance with the Enhanced Water Treatment Rule.

Defendant shall ensure that, once the OSPS UV facility becomes operational, in accordance with Paragraph 21(j), approximately 90 percent of the drinking water provided by Defendant to the City of White Plains shall be in compliance with the Enhanced Water Treatment Rule.

Defendant shall provide UV treated drinking water from Shaft 22, in compliance with the Enhanced Water Treatment Rule, to the K-B South Connections.

b.    Public notice requirements:  At all times after the Effective Date, Defendant shall perform public notification in accordance with 40 C.F.R. Part 141, Subpart Q, for Defendant's failure to comply with the treatment technique requirement of 40 C.F.R. Part 141, Subpart W.  Public notification must be conducted on a quarterly basis, and must be provided in writing to the owner and operator of the public water system of any Member Municipality in which any resident or customer, at any point during the year, is scheduled to receive water from Water District No. 1 that does not comply with the Enhanced Water Treatment Rule.  In addition, the public notification must be published on Defendant's website until the termination of this Consent Decree.

Defendant shall provide a draft of the proposed quarterly notice to the United States for review and approval no later than 14 Days after the Effective Date.  If, at any time, Defendant wishes to make changes to the content of the quarterly notice (other than to the date of the notice), it shall submit a proposed draft of the revised notice to the United States for its approval. The proposed draft notice must be submitted to the United States at least 21 Days prior to the date Defendant wishes to submit such revised notice for publication.

c.   <u>Cryptosporidium action plan and enhanced monitoring</u>:  (i) Defendant

shall undertake a Cryptosporidium action plan, which includes weekly monitoring of water taken

from a Water District No. 1 Kensico Reservoir source water sampling point, prior to any water

treatment, until such time as the Local UV Treatment Systems project, as described in Paragraph

21, is completed.  The Cryptosporidium action plan is attached hereto as Appendix A and

incorporated by reference.  (ii) Defendant shall implement the Cryptosporidium action plan,

attached hereto as Appendix A, 10 days from the Date of Lodging, or 90 days from the date of

submission of the Consent Decree to the Westchester County Board of Legislators, whichever is

later.  (iii) If, at any time, Defendant wishes to make changes to the action plan, it shall submit a

proposed draft of the revised action plan to the United States for approval.  If the United States

does not approve of changes to the action plan, Defendant may invoke dispute resolution under

Section XII.

d.   Defendant shall publish on its website the results of its weekly monitoring

for Cryptosporidium in the water taken from the Kensico Reservoir.

21.   Defendant shall design, construct, test and operate the Local UV Treatment

Systems in accordance with the following schedule:

a.   By May 15, 2015, obtain construction bonding authorization.

b.   By May 15, 2015, complete and submit to NYSDOH for approval, with

copies to the United States and WCDOH, the final design for the Local UV Treatment Systems.

Defendant shall submit timely responses to any subsequent requests or questions from NYSDOH

in connection with the final design for the Local UV Treatment Systems.

c.   No later than 60 days from date of NYSDOH approval of final design,

advertise for bids.

d.      By February 16, 2016, issue the Notice to Proceed to begin construction to prepare the OSPS facility to accommodate the UV Treatment Unit.

e.      By August 15, 2016, complete Purchase of all major equipment to be purchased by the County necessary for the Local UV Treatment Systems.

f.      By October 31, 2016, or 75 Days after the completion of the milestone set forth in Paragraph 21(e), whichever is later, have all major equipment purchased by the County for the OSPS UV Treatment System on site.

g.      By December 31, 2016, issue the Notice to Proceed to begin construction to prepare the CAPS facility to accommodate the UV Treatment Unit.

h.      By February 15, 2017, complete installation of the OSPS UV Unit and initiate start-up and testing.

i.      No later than 15 Days after the completion of the installation of the OSPS UV Unit, for the purposes of obtaining a completed works approval from NYSDOH, submit to NYSDOH and WCDOH documentation and certifications that the OSPS UV Unit was completed and constructed in substantial conformance with the final design, as approved by NYSDOH.  Defendant shall submit timely responses to any subsequent requests or questions from NYSDOH or WCDOH in connection with the completed works approval for the OSPS UV Unit.

j.      By May 15, 2017, complete start up and testing and commence operation of the OSPS UV Unit in compliance with the disinfection requirements set forth at 40 C.F.R. Part 141, Subpart W.

k.   By May 15, 2017, or nine months after the completion of the milestone set forth in Paragraph 21(e), whichever is later, ensure that all major equipment purchased by the County for the CAPS UV Treatment System is located on site.

l.   By December 15, 2017, complete installation of the CAPS UV Unit and initiate start-up and testing.

m.   No later than 30 Days after the completion of the installation of the CAPS UV Unit, for the purposes of obtaining a completed works approval from NYSDOH, submit to NYSDOH and WCDOH documentation and certifications that the CAPS UV Unit was completed and constructed in substantial conformance with the final design, as approved by NYSDOH.  Defendant shall submit timely responses to any subsequent requests or questions from NYSDOH or WCDOH in connection with the completed works approval for the CAPS UV Unit.

n.   By March 15, 2018, complete start-up and testing and commence operation of the CAPS UV Unit in compliance with the disinfection requirements set forth at 40 C.F.R. Part 141, Subpart W and all applicable provisions of the New York State Sanitary Code. Upon commencement of operation of the CAPS UV Unit, Defendant shall provide drinking water that is in compliance with the Enhanced Water Treatment Rule to all K-B Connections.

22.   Defendant represents that, with the exception of Paragraphs 21 (a) and (b), the completion of the compliance measures set forth in Paragraph 21 requires Defendant to obtain one or more of the following approvals: (i) from NYSDOH of the final design for the Local UV Treatment Systems; and (ii) from NYSDOH the "completed works approval" referenced in Paragraphs 21(i) and (m).

23.     Where any obligation under Paragraph 21 requires an approval referred to in Paragraph 22, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such approvals.

24.     In the event that the approval described in Paragraph 22(i) is not obtained by August 15, 2015, and provided that Defendant has submitted timely and complete applications and taken all other actions necessary to obtain the approvals, all deadlines listed in Paragraph 21, with the exception of Paragraphs 21(a) and 21(b), shall be automatically extended by the number of days between August 15, 2015, and the actual date that approval is obtained.

25.     If, as a result of delays in obtaining the approvals referenced in Paragraph 22, Defendant believes it needs additional relief other than the automatic extension provided for in Paragraph 24, Defendant may seek relief under the provisions of Section XI.

VIII.     SUPPLEMENTAL ENVIRONMENTAL PROJECTS

26.     Defendant shall implement the following SEPs, in accordance with all provisions of this Consent Decree:

a.     Enhanced Pharmaceutical Take Back Collection Schedule: For all residents of Water District No. 1, Defendant shall increase the number of days during which residents' unused pharmaceuticals will be accepted at Defendant's Household Materials Recovery Facility in Valhalla, or at other designated sites located within the Member Municipalities. Two collection days per week will be added, for a total of approximately 104 additional days per year. This enhanced schedule shall take effect no later than 30 Days after the Effective Date, and shall remain in place until three years after the Effective Date, or until 312 additional collection days have been completed, whichever occurs first.

b.      Enhanced Hazardous Household Chemical Collection Schedule:  For all residents of Water District No. 1, Defendant shall increase the number of days during which residents' unused hazardous household chemicals will be accepted at Defendant's Household Materials Recovery Facility in Valhalla, or at other designated sites located within Member Municipalities.  One or two collection days per week will be added.  This enhanced scheduled shall take effect no later than 30 Days after the Effective Date, and shall remain in place until three years after the Effective Date, or until 220 additional collection days have been completed, whichever occurs first.

c.      Rain Barrel Distribution Program:  Defendant shall purchase at least $100,000 worth of 55-gallon rain barrels for residential collection and storage of roof rainwater runoff.  Defendant shall distribute the rain barrels to residents of Water District No. 1 for a nominal fee to reimburse costs incurred by Defendant's distribution partners in distributing the rain barrels and educating the public about their purpose, installation and maintenance. Defendant shall commence the Rain Barrel Distribution Program within 60 Days after the Effective Date, and shall continue to implement it until all rain barrels are distributed.

27.     Defendant is responsible for the satisfactory completion of each SEP in accordance with the requirements of this Consent Decree.  Defendant may use contractors or consultants in planning and implementing each SEP.

28.     With regard to each SEP, Defendant certifies the truth and accuracy of each of the following:

a.      All cost information provided to EPA in connection with EPA's approval of the SEP is complete and accurate.  Defendant in good faith estimates that the cost to implement each SEP is as follows:

15

      i.    Enhanced Pharmaceutical Take Back Collection: $252,700

      ii.    Enhanced Hazardous Household Chemical Collection: $338,529

      iii.    Rain Barrel Distribution Program: $100,000

    b.    As of the Date of Lodging, Defendant is not required to perform or develop the SEP by any federal, state, or local law or regulation, and is not required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum.

    c.    The SEP is not a project that Defendant was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Consent Decree.

    d.    Defendant has not received and will not receive credit for the SEP in any other enforcement action.

    e.    Defendant will not receive any reimbursement for any portion of the SEP from any other person or entity.

    29.    <u>SEP Completion Reports</u>:  Within 30 Days after the completion of each SEP, Defendant shall submit a SEP Completion Report to the United States, in accordance with Section XV.  Each SEP Completion Report shall contain the following information:

    a.    a detailed description of the SEP as implemented;

    b.    a description of any problems encountered in completing the SEP and the solutions thereto;

    c.    an itemized list of all eligible SEP costs expended;

    d.    a certification that the SEP has been fully implemented pursuant to the provisions of this Consent Decree; and

e.      a description of the environmental and public health benefits resulting from implementation of the SEP (with a quantification of the benefits and pollutant reductions, if feasible).

30.      EPA may require information in addition to that described in the preceding Paragraph, in order to evaluate Defendant's SEP Completion Reports.

31.      After receiving a SEP Completion Report, the United States shall notify Defendant whether or not it finds that Defendant has completed the SEP.  If the United States finds that Defendant has not completed the SEP in accordance with this Consent Decree, stipulated penalties may be assessed as set forth in Section X.

32.      Disputes concerning the satisfactory performance of the SEPs may be resolved under the dispute resolution procedures of Section XII.

33.      Each submission required under this Section shall be signed by an official with knowledge of the SEP and shall bear the certification language set forth in Paragraph 39.

34.      Any prepared public statement, oral or written, in print, film, or other media, made by Defendant making reference to any SEP implemented in accordance with this Consent Decree shall include the following language:  "This project was undertaken in connection with the settlement of an enforcement action, United States v. County of Westchester, taken on behalf of the U.S. Environmental Protection Agency under the Safe Drinking Water Act."

## IX.      REPORTING REQUIREMENTS

35.      All reports required to be submitted pursuant to this Consent Decree shall be submitted to the United States and EPA in accordance with Section XV.

36.     Beginning on the Effective Date and continuing until termination of this Consent

Decree pursuant to Section XIX, Defendant shall implement the following reporting and

notification measures:

a.     Monthly Operations Report:  Defendant shall continue to conduct monthly

operations reporting for Water District No. 1 as specified in 40 C.F.R. § 141.75 and submit

copies of these Monthly Operations Reports for each preceding month to EPA by the tenth Day

of each month following the Effective Date.  The Monthly Operations Reports shall identify (i)

the flow information regarding the amount of water distributed by Water District No. 1, if any,

that at any point in the preceding month failed to comply with the Enhanced Water Treatment

Rule, and (ii) the Member Municipalities to which any such water was distributed.  All reporting

in the Monthly Operations Reports shall be in accordance with applicable New York law.

b.     Quarterly Reports:  Within 30 Days after the end of each calendar-year

quarter (*i.e.*, by January 30, April 30, July 30, and October 30), Defendant shall submit in writing

to the United States and EPA a quarterly report and certification ("Quarterly Report") for the

preceding quarter.  The Quarterly Report shall detail the status and progress of the Compliance

Measures, including the Interim Measures and the SEPs, including a description of: (a) the work

performed during the preceding three-month period; (b) the work to be performed during the

following three-month period pursuant to this Consent Decree; (c) problems encountered or

anticipated, together with implemented or proposed solutions; (d) Defendant's progress in

satisfying its obligations in connection with the SEPs, including a narrative description of

activities undertaken and a summary of costs incurred since the previous report.  The Quarterly

Report also shall identify each milestone date specified in Section VII and Section VIII

scheduled to be completed in the quarter covered by the report and certification.  For each such

milestone, the report and certification shall state whether or not Defendant has fully completed that milestone and, if not, the work remaining to be done to achieve full compliance with such milestone, and a schedule for completion of such work. If a scheduled milestone has not been met, the report and certification shall state what, if any, impact there will be on compliance with the remaining milestones in Section VII and Section VIII, and Defendant shall prepare and submit, within 15 Days, a plan to ensure that the schedule of remaining milestones in Section VII and Section VIII is complied with to the maximum extent practicable.

      c.    Defendant shall publish each Quarterly Report, or the information contained in each Quarterly Report, on its website within seven Days of submitting the quarterly report to the United States and EPA.

    37.    If Defendant fails to comply with, violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify the United States of such violation and its likely duration, in writing, within 14 Days of the Day Defendant first becomes aware of the violation, with an explanation of the likely cause of the violation and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of the violation cannot be fully explained at the time the report is due, Defendant shall so state in the report. Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of its cause, within 30 Days of the Day Defendant becomes aware of its cause. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section XV.

    38.    Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Consent Decree may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally or by electronic or

facsimile transmission as soon as possible, but no later than 24 hours after Defendant first learns of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

39.   Each report submitted by Defendant pursuant to this Consent Decree shall be signed by an official of Defendant, and shall include the following certification:

> I certify under penalty of law, pursuant to 28 U.S.C. § 1746, that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on personal knowledge or my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering such information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

40.   The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the SDWA, the Enhanced Water Treatment Rule, or by any other federal, state, or local law, regulation, permit, or other requirement.

41.   Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## X.   STIPULATED PENALTIES

42.   Defendant shall be liable to the United States for stipulated penalties for violations of this Consent Decree in accordance with this Section, unless excused under Section XI, Section XII or Paragraph 54. A violation includes failing to perform any obligation required by the terms of this Consent Decree, according to all applicable requirements of this Consent

Decree and within the specified time schedules established by or approved under this Consent Decree.

43.     Late Payment of Civil Penalty.  If Defendant fails to pay the civil penalty required to be paid pursuant to Section VI when due, Defendant shall pay a stipulated penalty of $1,000 per Day for each Day that the payment is late.

44.     Failure to Comply With Deadlines for Interim Measures.  The following stipulated penalties shall accrue per Day per violation for each failure to comply with the deadlines for the interim measures described in Paragraph 20:

        a.     For failure to meet any of the deadlines set forth in Paragraph 20(a): a $875 penalty per Day per violation.

        b.     For failure to meet any of the deadlines set forth in Paragraph 20(b): a $300 penalty per Day per violation.

        c.     For failure to meet any of the deadlines set forth in Paragraph 20(c): a $875 penalty per Day per violation.

45.     Failure to Comply With Deadlines for Local UV Treatment Systems:  The following stipulated penalties shall accrue per Day per violation for each failure to comply with the deadlines for the milestones described in Paragraph 21:

        a.     For failure to meet the deadlines set forth in Paragraphs 21(a) through (i) and Paragraphs 21(k) through (m): a $875 penalty per Day per violation.

        b.     For failure to meet the final deadline for completion of the Local UV Treatment Systems, set forth in Paragraph 21(j) and Paragraph 21(n): $1,800 penalty per Day per violation.

46.     Notwithstanding any other provision of this Consent Decree (excluding Paragraph 54 and Section XI, which shall still apply), any stipulated penalties resulting from Defendant's failure to comply with the deadlines for the milestones set forth in Paragraphs 21(a) through (f), or Paragraphs 21(h) or 21(i), shall not be due and owing by Defendant if, and only if, Defendant: (i) sets aside, in a designated account, an amount equal to the total amount of such stipulated penalties that would be due and owing but for the effect of this Paragraph; (ii) notifies the United States that it has set aside such funds; and (iii) meets the deadline contained in Paragraph 21(j). If Defendant meets the deadline contained in Paragraph 21(j), the funds set aside for such stipulated penalties may be removed from the designated account and such stipulated penalties shall not become due and owing. If Defendant fails to meet the deadline contained in Paragraph 21(j), the United States may demand payment of all funds for stipulated penalties set aside pursuant to this Paragraph, which funds shall be paid by Defendant within 14 Days of such demand. The Quarterly Reports required by Paragraph 36(b) shall certify the amount of funds held in the designated account pursuant to the terms of this Paragraph, and shall state the alleged violation of the Consent Decree for which such funds have been set aside.

47.     Notwithstanding any other provision of this Consent Decree (excluding Paragraph 54 and Section XI, which shall still apply), any stipulated penalties resulting from Defendant's failure to comply with the deadlines for the milestones set forth in Paragraphs 21(g), or Paragraphs 21(k) through (m), shall not be due and owing by Defendant if, and only if, Defendant: (i) sets aside, in a designated account, an amount equal to the total amount of such stipulated penalties that would be due and owing but for the effect of this Paragraph; (ii) notifies the United States that it has set aside such funds; and (iii) meets the deadline contained in Paragraph 21(n). If Defendant meets the deadline contained in Paragraph 21(n), the funds set

aside for such stipulated penalties may be removed from the designated account and such stipulated penalties shall not become due and owing. If Defendant fails to meet the deadline contained in Paragraph 21(n), the United States may demand payment of all funds for stipulated penalties set aside pursuant to this Paragraph, which funds shall be paid by Defendant within 14 Days of such demand. The Quarterly Reports required by Paragraph 36(b) shall certify the amount of funds held in the designated account pursuant to the terms of this Paragraph, and shall state the alleged violation of the Consent Decree for which such funds have been set aside.

48.     Failure to Comply With Reporting Requirements. The following stipulated penalties shall accrue per Day per violation for each violation of the reporting requirements set forth in Paragraph 36:

| Days of Non-Compliance Or Violation | Penalty per Day per Violation |
|---|---|
| 1st to 120th Day | $300 |
| 121st to 180th Day | $450 |
| After 180 Days | $625 |

49.     SEP Compliance. Defendant shall pay the following stipulated penalties if it halts or abandons one or more of the SEPs set forth in Section VIII:

a.     Enhanced Pharmaceutical Take Back Collection: $252,700

b.     Enhanced Hazardous Household Chemical Collection: $338,529

c.     Rain Barrel Distribution Program: $100,000

The penalty under this Paragraph shall accrue as of the date Defendant ceases to perform the SEP.

50.     If Defendant fails to comply with the deadlines in Section VIII for implementing one or more of the SEPs, Defendant shall pay a stipulated penalty of $300 per SEP per Day.  The penalties under this Paragraph shall accrue as of the dates specified for implementing each of the SEPs.

51.     Except as otherwise specified in this Consent Decree, the stipulated penalties provided for in this Consent Decree shall begin to accrue on the Day after performance is due or on the Day that a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

52.     Except as otherwise provided for in this Consent Decree, Defendant shall pay any stipulated penalty within 30 Days of receiving a written demand from the United States.

53.     Defendant shall pay stipulated penalties owing to the United States in accordance with the procedures set forth in Paragraphs 17 and 18, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which alleged violation(s) the penalties are being paid.

54.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree without further order of the Court.

55.     Stipulated penalties shall continue to accrue as provided in this Section during any dispute resolution process, but need not be paid until the following:

        a.      If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together

with interest, to the United States within 30 Days of the Effective Date of the agreement or the receipt of EPA's decision.

      b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 30 Days of receiving the Court's decision or order, except as provided in subparagraph c of this Paragraph.

      c.     If any Party appeals the Court's decision and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

56.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

57.     Subject to the provisions of Section V, the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of the SDWA or the Enhanced Water Treatment Rule, Defendant shall be entitled to a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## XI.   FORCE MAJEURE

58.     A "force majeure" event, for purposes of this Consent Decree, is defined as any

event arising from causes beyond the control of Defendant, any entity controlled by Defendant,

or Defendant's contractors, that delays or prevents the performance of any obligation under this

Consent Decree within the specified time period, despite Defendant's best efforts to fulfill the

obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation"

includes using best efforts to anticipate any potential force majeure event and best efforts to

address the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent

or minimize any resulting delay to the greatest extent possible.  "Force majeure" does not include

Defendant's financial inability to perform any obligation under this Consent Decree.

59.     If any event occurs or has occurred that may delay the performance of any

obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant

shall provide notice by telephone and electronic mail to EPA, in accordance with the notice

provisions of Section XV, within three business Days of when Defendant first knows there is a

substantial likelihood that the event might cause a delay.  Within fourteen Days after the notice

required by the first sentence of this Paragraph, Defendant shall provide in writing to the United

States and EPA, in accordance with the notice provisions of Section XV,  an explanation and

description of the reasons for the delay; the anticipated duration of the delay; all actions taken or

to be taken to prevent or minimize the delay; a schedule for implementation of any measures to

be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for

attributing such delay to a force majeure event if it intends to assert such a claim; and a statement

as to whether, in the opinion of Defendant, such event may cause or contribute to an

endangerment to public health, welfare or the environment.  Defendant shall include with any

written notice required by this Section available documentation supporting the claim that the delay was attributable to a force majeure event. Failure to substantially comply with the requirements of this Section shall preclude Defendant from asserting any defense of force majeure for that event, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

60.    If the United States agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by the United States for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. The United States will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

61.    If the United States does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, or does not agree to the extension of time sought by Defendant, the United States will notify Defendant in writing of its position and the basis thereof. The position of the United States shall be binding, unless Defendant invokes the dispute resolution procedures set forth in Section XII.

62.    If Defendant elects to invoke the dispute resolution procedures set forth in Section XII, it shall do so no later than 15 Days after receipt of Notice from the United States, as set forth in Paragraph 61. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the relief sought under this Section is warranted. If

27

Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation(s) of this Consent Decree.

## XII.   DISPUTE RESOLUTION

63.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to raise and resolve disputes arising under or with respect to this Consent Decree.  Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Consent Decree.

64.     Informal Dispute Resolution:  Any dispute subject to the dispute resolution procedures set forth in this Section shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written notice of dispute.  Such notice of dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 14 Days after the conclusion of the informal negotiation period, Defendant invokes the formal dispute resolution procedures set forth below.

65.     Formal Dispute Resolution.  To invoke formal dispute resolution procedures within the time period provided in the preceding Paragraph, Defendant shall serve upon the United States a written statement of position regarding the matter in dispute.  The statement of position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

66.     The United States shall serve its statement of position upon Defendant within 30 Days of receipt of Defendant's statement of position. The United States' statement of position shall include, but need not be limited to, factual data, analysis, or opinion supporting that position and supporting documentation relied upon by the United States. The United States' statement of position shall be binding on Defendant, unless Defendant files with the Court a motion for judicial review of the dispute, in accordance with Paragraph 68.

67.     A Party's failure, in good faith, to include factual data, analysis, opinion, argument, or supporting documentation in its statement of position shall not preclude the use of same upon judicial review.

68.     Defendant may seek judicial review of the dispute by filing with the Court, and serving on the United States, a motion requesting judicial resolution of the dispute. The motion must be filed within 14 Days of receipt of the United States' statement of position pursuant to the preceding Paragraph, unless the Court requires the filing of a pre-motion letter before the filing of a motion, in which case the pre-motion letter must be filed within such 14 Day period.

69.     The United States shall respond to Defendant's motion within 14 Days, and Defendant may file a reply memorandum within 10 Days, unless a court orders otherwise.

70.     Either Party may request that a dispute submitted for judicial review be afforded expedited treatment by the Court.

71.     <u>Standard of Review</u>

a.     <u>Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in this Consent Decree, for all disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the

burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

        b.    <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 68, Defendant shall bear the burden of proving that its position complies with this Consent Decree and furthers the objectives of this Consent Decree.

72.    The invocation of the dispute resolution procedures set forth in this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties and interest, if applicable, with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 55.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section X.

XIII.    <u>INFORMATION COLLECTION AND RETENTION OF RECORDS</u>

73.    Until termination of this Consent Decree, the United States and its authorized representatives, including attorneys, contractors, and consultants, shall have the right of entry into any property or facility owned and/or operated by Defendant relating to Water District No. 1 at all reasonable times, upon written request and reasonable notice, to:

        a.    monitor the progress of activities required by this Consent Decree;

        b.    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree; and

        c.    assess Defendant's compliance with this Consent Decree.

The rights provided by this Paragraph are in addition to any rights that United States or EPA may have under applicable laws, regulations, or permits.

74.     Upon written request and reasonable notice, Defendant shall provide EPA or its authorized representatives splits of any samples taken by Defendant pursuant to the Cryptosporidium action plan. Upon request, EPA shall provide Defendant splits of any samples taken by EPA. The requirement of the first sentence of this Paragraph is in addition to any rights that United States or EPA may have under applicable laws, regulations, or permits to be provided such samples.

75.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all Documents, records, or other information (including Documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information retention period, upon request by the United States, Defendant shall provide copies of any Documents, records, or other information required to be maintained under this Paragraph. Defendant may assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

76.     Defendant may assert that certain Documents, records, or other information may be withheld under a privilege or protection recognized by federal law. If Defendant asserts such a privilege or protection, it shall provide the following information:  (a) the title of the Document, record, or information; (b) the date of the Document, record, or information; (c) the

name and title of each author of the Document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Document, record, or information; and (f) the privilege or protection asserted by Defendant.  However, Defendant may not withhold on the basis of such privilege or protection the following: (1) any sampling, analytical, monitoring, scientific, chemical, or engineering data regarding Water District No. 1, including its operations; and (2) any portion of any final record that Defendant is required to create or generate pursuant to this Consent Decree.

77.      This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or EPA pursuant to applicable laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain Documents, records, or other information imposed by applicable laws, regulations, or permits.

XIV.    COSTS

78.      The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

XV.    NOTICES

79.      Unless otherwise specified herein, all notifications, submissions, or communications required by this Consent Decree shall be made in writing and addressed as follows:

To the United States:

Andrew E. Krause
Cristine Irvin Phillips
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY  10007
E-mail:   andrew.krause@usdoj.gov
              cristine.phillips@usdoj.gov

eescdcopy.enrd@usdoj.gov
Re: DJ # 90-5-1-1-10536

EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-5-1-1-10536

To the EPA:

Chief, Water Compliance Branch
Division of Enforcement and Compliance Assistance
U.S. Environmental Protection Agency, Region II
290 Broadway, 20th Floor
New York, NY  10007

Chief, Water and General Law Branch
Office of Regional Counsel
U.S. Environmental Protection Agency, Region II
290 Broadway, 16th Floor
New York, NY  10007

To Defendant:

Hon. Robert P. Astorino
Westchester County Executive
Michaelian Office Building
148 Martine Avenue, 9th Floor
White Plains, NY  10601

Robert F. Meehan
Westchester County Attorney
Westchester County Attorney's Office
148 Martine Avenue, 6th Floor
White Plains, NY 10601

Adam Rodriguez
Associate County Attorney
Westchester County Attorney's Office
148 Martine Avenue, 6th Floor
White Plains, New York 10601
E-mail:   aqrc@westchestergov.com

Thomas J. Lauro, P.E.
Commissioner of Westchester County Department of Environmental Facilities
270 North Avenue
New Rochelle, NY 10801

80.     Any Party may, by written notice to the other Party, change its designated notice recipient(s) or notice address(es) provided above.

81.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

<h3 style="text-align:center">XVI.     EFFECTIVE DATE</h3>

82.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

<h3 style="text-align:center">XVII.     CONTINUING JURISDICTION OF THIS COURT</h3>

83.     The Court shall retain jurisdiction over this action until termination of this Consent Decree, for the purposes of resolving disputes arising under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

### XVIII.   MODIFICATION

84.      The terms of this Consent Decree, including Appendix A, may be modified only by a subsequent written agreement signed by both Parties.  Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.

85.      Any disputes concerning modification of this Consent Decree shall be resolved in accordance with the dispute resolution procedures of Section XII, provided, however, that, instead of the burdens of proof described in Paragraph 71, the Party seeking the modification must demonstrate that it is entitled to the requested modification for one of the reasons set forth in Rule 60(b) of the Federal Rules of Civil Procedure, and shall be subject to the burden of proof required of parties moving for relief pursuant to Rule 60(b).

### XIX.   TERMINATION

86.      After Defendant has completed all of the requirements set forth in Sections VII and VIII, and has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a request for termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

87.      Following receipt by the United States of Defendant's request for termination, the Parties shall confer informally concerning the request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that this Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating this Consent Decree.

88.     If the United States does not agree that this Consent Decree may be terminated, Defendant may invoke the dispute resolution procedures of Section XII.  However, Defendant shall not use the dispute resolution procedures of Section XII for any dispute regarding termination until 60 days after service of its request for termination.

## XX.    PUBLIC PARTICIPATION

89.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent to the entry of this Consent Decree if the comments regarding the Consent Decree disclose facts or considerations indicating that this Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of this Consent Decree, unless the United States has notified Defendant in writing that it no longer supports entry of this Consent Decree.

## XXI.    SIGNATORIES AND SERVICE

90.     The undersigned representative of the Defendant, and the Acting Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, certify that they are fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind to this document the respective parties they represent.

91.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail (or electronic means) with respect to all matters arising under or relating to this Consent Decree and to waive

the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court.

## XXII.    INTEGRATION

92.      This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Consent Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Decree or the settlement it represents, nor shall any such document, representation, inducement, agreement, understanding, or promise be used in construing the terms of this Consent Decree.

## XXIII.    FINAL JUDGMENT

93.      Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the Parties.

* * * * * * * * * *

DATED and ENTERED this 2nd day of ___Sept.___, 2015:

_____
NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE

37

The Parties, by their undersigned representatives, enter into this Consent Decree in

*United States v. County of Westchester.*

FOR THE UNITED STATES OF AMERICA:

Dated: New York, New York
       May 20         , 2015

                              PREET BHARARA
                              United States Attorney for the
                              Southern District of New York

                    By:     *Andrew Krause*
                              _____
                              ANDREW E. KRAUSE
                              CRISTINE IRVIN PHILLIPS
                              Assistant United States Attorneys
                              86 Chambers Street, 3rd Floor
                              New York, NY  10007

       Washington, D.C.
       May 20         , 2015

                              *John C. Cruden*
                              _____
                              JOHN C. CRUDEN
                              Assistant Attorney General
                              Environment and Natural Resources Division
                              U.S. Department of Justice

                              *Attorneys for the United States of America*

38

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

Dated: Washington, D.C.
_____, 2015

CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

New York, New York
_____, 2015

ERIC SCHAAF
Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway
New York, NY 10007

OF COUNSEL:

Phyllis S. Kaplan Feinmark
Chief, Water and General Law Branch
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway
New York, NY 10007

FOR THE COUNTY OF WESTCHESTER, NEW YORK:

Dated: White Plains, New York
         May 5    , 2015


ROBERT F. MEEHAN
Westchester County Attorney
148 Martine Avenue, 6th Floor
White Plains, NY 10601


Dated: White Plains, New York
  ,      May 6    , 2015


THOMAS J. LAURO
Commissioner
Westchester County Department of
Environmental Facilities
270 North Avenue
New Rochelle, NY 10801

# APPENDIX A

# WESTCHESTER COUNTY
# WATER DISTRICT No. 1

## INTERIM
## CRYPTOSPORIDIUM MONITORING AND ACTION PLAN

### February 17, 2015

**Westchester County**
**Department of Environmental Facilities**

Commissioner Thomas J. Lauro, P.E.

**Westchester County**
**Department of Health**

Commissioner Sherlita Amler, M.D.,M.S.,FAAP

Westchester County Water District No.1 Interim Cryptosporidium Monitoring and Action Plan          2

# **Preface**

This Cryptosporidium Monitoring and Action Plan for Westchester County Water District No. 1 (WCWD #1) is modeled after routine cryptosporidium monitoring performed by the New York City Department of Environmental Protection at Kensico Reservoir, and the New York City Cryptosporidium Action Plan last revised January 30, 2009.

Westchester County Water District No.1 Interim Cryptosporidium Monitoring and Action Plan                    3

## Routine Cryptosporidium Monitoring

Westchester County Department of Environmental Facilities (WCDEF) shall routinely collect one fifty-liter water sample on a weekly basis from a WCWD #1 Kensico Reservoir source water sampling point, prior to any water treatment, to be analyzed by a certified laboratory.  WCDEF shall provide all sample test results via e-mail to the Westchester County Department of Health (WCDOH) in a timely manner.

# Cryptosporidium Action Plan

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## Provisional "No Action" Level:   0 - 3 Oocysts Detected -

- WCDOH routine review of water quality and disease/syndromic surveillance data remains unchanged.

- No other action required at this time.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## Provisional Action Level 1: 4-6 Oocysts Detected -

- Available relevant information, including water quality, water system operations, and disease/syndromic surveillance information (see Attachment A), for the period surrounding the sampling date(s) will be assembled and reviewed by the WCDOH and WCDEF staff.

- WCDEF will conduct additional water testing for *Cryptosporidium*, at a frequency of twice per week (one routine sample plus one additional sample) at the WCWD #1 Kensico Reservoir source water sampling point.

- WCDOH will confer with the New York State Department of Health (NYSDOH) to determine if any further action is warranted.  Further action could include: elevation to Provisional Action Level 2 or 3 and/or additional sampling of source water.

## Provisional Action Level 1: De-escalation Plan -

If results from four successive sampling events conducted over a minimum of four separate days indicate that *Cryptosporidium* concentrations have dropped below 4 oocysts/50L:

- Available relevant information, including water quality, water system operations, and disease/syndromic surveillance information (see Attachment A), for the period surrounding the sampling date(s) will again be reviewed by the WCDOH and WCDEF staff.

- WCDOH will confer with NYSDOH to determine whether there is any need for continued response action under Provisional Action Level 1 based on data identified in Attachment A.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Westchester County Water District No.1 Interim Cryptosporidium Monitoring and Action Plan          5

---

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## Provisional Action Level 2:  7-10 Oocysts Detected -

- Available relevant information, including water quality, water system operations, and disease/syndromic surveillance information (see Attachment A), for the period surrounding the sampling date(s) will be assembled and reviewed by the WCDOH and WCDEF staff.

- WCDEF will conduct additional water testing for *Cryptosporidium*, at a frequency of three times per week (one routine sample plus two additional samples), at the WCWD #1 Kensico Reservoir source water sampling point.

- Based on consideration of available relevant information and data (see Attachment A), the WCDOH in consultation with the NYSDOH will decide whether to undertake any other response actions.  Further action could include elevation to Provisional Action Level 3, or other enhanced monitoring activities, if deemed appropriate.

- Public water systems receiving water from WCWD #1 Kensico Reservoir source shall be notified and informed of any potential response actions. (See Attachment B)

- Potential additional notifications by WCDOH (if appropriate) include:
  - NYSDOH AIDS Institute.
  - HIV service providers.
  - Healthcare providers.
  - Hospitals served by public water systems receiving water from WCWD #1 (Kensico Reservoir source).

## Provisional Action Level 2:  De-escalation Plan -

If results from four successive sampling events conducted over a minimum of four separate days indicate that *Cryptosporidium* concentrations have dropped below 7 oocysts/50L, de-escalation may occur as follows:

- Available relevant information, including water quality, water system operations, and disease/syndromic surveillance information (see Attachment A), for the period surrounding the sampling date(s) will again be reviewed by the WCDOH and WCDEF staff.

- WCDOH will confer with the NYSDOH to determine whether or not there is any need for continued response action under Provisional Action Level 2 based on the data identified in Attachment A.

- As appropriate, parties notified under Provisional Action Level 2 will be informed of the de-escalation.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Westchester County Water District No.1 Interim Cryptosporidium Monitoring and Action Plan          6

---

## Provisional Action Level 3:  > 10 Oocysts Detected -

- Follow the steps described in Provisional Action Level 2.

- WCDEF will conduct daily water testing for *Cryptosporidium* at the WCWD #1 Kensico Reservoir source water sampling point (until the de-escalation criteria are met).

- Based on consideration of available relevant information and data (see Attachment A), the WCDOH in consultation with the NYSDOH will decide whether a "Boil Water Advisory" is warranted.

- If it is determined that a Boil Water Advisory (BWA) is warranted, the following actions will be undertaken:

  – WCDOH will notify the public water systems receiving water from WCWD #1 Kensico Reservoir source. (See Attachment B)

  – BWA will be distributed via methods as deemed appropriate.

- WCDOH will confer with the NYSDOH to determine whether any further action is warranted.

## Provisional Action Level 3: De-escalation Plan -

If results from four successive sampling events conducted over a minimum of four separate days indicate that *Cryptosporidium* concentrations have dropped below 7 oocysts/50L, de-escalation may occur as follows:

- Available relevant information, including water quality, water system operations, and disease/syndromic surveillance information (see Attachment A), for the period surrounding the sampling date(s) will again be reviewed by the WCDOH and WCDEF staff.

- WCDOH will confer with the NYSDOH to determine whether/when to discontinue response action under Provisional Action Level 3 and lift the BWA, if issued, based on whether or not data identified in Attachment A indicate that conditions have remained at, or returned to, their baseline levels.

- Once the decision to lift the BWA is made, all parties notified of the advisory will be informed that the BWA has been lifted via methods as deemed appropriate.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Westchester County Water District No.1 Interim Cryptosporidium Monitoring and Action Plan          7

---

**ATTACHMENT A**
**Water Quality, Water System and**
**Disease/Syndromic Surveillance Parameters to be reviewed.**

### A. Water Quality and Water System Parameters

- *Cryptosporidium* results from recent samples, and any resample results.

- Any increase in turbidity at WCWD #1 Kensico Reservoir source water sampling point used for routine turbidity monitoring.

- Any reports of coliforms or *E. coli* in public water systems receiving water from WCWD #1 Kensico Reservoir source.

- Any disruption in treatment practices for any amount of time at WCWD #1 Kensico Reservoir source and at the public water systems receiving water from WCWD #1 Kensico Reservoir source.

### B. Disease/Syndromic Surveillance Parameters

- Cryptosporidiosis Human Surveillance Data.

- Syndromic Surveillance Data for GI illness.

Westchester County Water District No.1 Interim Cryptosporidium Monitoring and Action Plan       8

**ATTACHMENT B**
**Contact Information**
**DO NOT DISSEMINATE – CONFIDENTAL INFORMATION**

**PAGE INTENTIONALLY LEFT BLANK**